The first case this morning is number 06-7330, Myore v. Department of Veterans Affairs. Mr. Carpenter. Thank you very much, Your Honor. Good morning. Kenneth Carpenter, appearing on behalf of the Department of Myore. Ms. Myore appeals the decision of the United States Court of Appeals for Veterans Claims, which mistakenly concluded that 38 U.S.C. section 1310 precluded payment for dependency and indemnity compensation benefits when a veteran's death was the result of his own willful misconduct. The statute in question, specifically subsection B, is framed in the negative and states specifically that dependency and indemnity compensation shall not be paid to a surviving spouse unless, and there are two alternative sections. It still is a negative provision, as you say. The authorizing provision is A, which of course refers to Chapter 11. Yes, but the authorizing provision does not reference a death while on active duty, and more importantly, a service member cannot qualify for benefits under Chapter 11. Therefore, it is an unreasonable reading of subsection A as controlling subsection B. Subsection B specifically authorizes the award of dependency and indemnity compensation under the circumstances in which a veteran dies while on active duty service. That's precisely what happened here. There is no reference to willful misconduct in subsection B in subparagraph 2. But once again, B is not an authorizing provision. It's a negating provision with certain qualifications. But if you accept that proposition, Your Honor, then there is no authorization for subsection B-2. That is simply an unreasonable interpretation of section A as being authorizing to the exclusion of a service member who dies while on active duty service. It renders the subsection B-2 clause meaningless, and that simply is not a reasonable construction of 1310. Why does A not cover death while on active service? Because it specifically refers to the qualifying criteria under Chapter 11. This is not a claim under Chapter 11. This is a claim under Chapter 13. The qualifying criteria for Chapter 11 provides compensation for veterans who have completed their military service and have a resulting disability from a disease or injury that was incurred in active duty. In active duty. And this is not a disease or injury that was incurred in active duty. This was his death. And it was the result of circumstances that are not contemplated by an award of service connection under Chapter 11. And therefore, to protract, as both the VA and the Veterans Court have done, the reading of 1310 to exclude the benefits under 1310B because of reference to Chapter 11 simply makes no sense. Isn't this an injury suffered in the line of duty? Of course, it's the ultimate injury, death. It's the ultimate injury, Your Honor, but it is not an injury for which compensation can be paid to the veteran. The qualifying, 1110, which is the controlling portion of Chapter 11 that is referred to in 1310A, provides for the award of compensation. Compensation shall be paid to the veteran. This is not compensation which is to be paid to the veteran. This is compensation which is paid to the veteran survivor. The veteran survivor qualifies because the death occurred in the plain language of B2 while the veteran was serving on active duty. In other words, you're saying the veteran can't be compensated because of death. That's correct. So the intent of Congress is only to compensate the survivor, and Congress expressly identified in B2 an exception or an alternative method to Chapter 11 compensation for a service-connected death. This is not a service-connected death. You're saying, Mr. Carpenter, that A and B are not connected. No. But what about—and I wanted to give you a chance to respond to this. The government points out in its brief that the definition in 38 U.S.C. 1301, which says the term veteran as it is used in Chapter 13, and we're in 13, includes a person who died in the active military, naval, or air service. Now, you didn't focus on that. I wanted to give you a chance to respond to that. Well, Your Honor, that is—the language in 13 B2 refers to a veteran, a veteran who died while on active duty service. There's nothing excluded of that. The right here is the right to receive dependency and indemnity compensation. Why did he not die—he died while he was on active duty. That's correct, Your Honor, and therefore he was not eligible to apply for Chapter 11 benefits because he hadn't achieved the status of being a veteran for Chapter 11 compensation purposes. The predicate for the award of dependency and indemnity compensation under A and under subsection B1 is a death from a service-connected disability. But if he hadn't died, shot himself, and was badly injured, he would be ineligible to recover. He would be. That's correct. He would be. He would be. But you're saying his survivor can recover when he couldn't. I mean, isn't that moving away from an area of responsibility? No, Your Honor. One further step away has greater entitlement than the veteran. No, Your Honor. It's a conscious decision on the part of Congress by exclusion. Congress clearly could have put the willful misconduct language into 13b2. That would have been very simple to simply add that phrase, that a death as a result of willful misconduct will be excluded, will be precluded, as the Veterans Court found. That language is not there. Well, it says compensation shall not be paid to the surviving spouse. I mean, that's a blanket statement. That's right. And the unlesses don't retrieve it, do they? Yes, they do, Your Honor. They retrieve it to the extent that when a veteran dies while on active duty service, that's precisely the circumstances that happened here, and there is no language, as the Veterans Court interpreted this statute, to import from Chapter 11 the willful misconduct language. But it doesn't legitimize payment for, it's just a qualification, but it doesn't say shall not be paid. I mean, that's a broad statement. I respectfully disagree, Your Honor. It does authorize payment. There is no other provision in Chapter 13 for the payment of dependency and indemnity compensation except B2. It's the only authorizing provision in which Congress said the survivors of a service member who dies while on active duty will receive dependency and indemnity compensation. And the whole proposition here is to not have, as you exclude benefits to the veteran under Chapter 11, that same exclusion apply to the survivors. The survivors were dependent upon that active service member's income from his or her service. When that active service member died while on active duty, they lost that income. Dependency and indemnity compensation is to replace, at least in part, that income, and there is simply no plainly expressed intent to exclude. You simply have to infer it. You have to import it from Chapter 11, and you are simply overreaching when you do that. The eventuality is that veterans survive, excuse me, survivors of active duty service members should not be precluded from receiving benefits regardless of the nature and circumstances of the veteran's death. If Congress had wanted to do that, then Congress certainly was capable of doing that, as is demonstrated in Chapter 11 at 1110. There must be regulations. It must happen often enough. I mean, this was an extraordinary circumstance, but that a service person commits suicide through depression or whatever else while on active duty. And there is a VA general counsel's opinion, I believe, that says that if it is as a result of suicide, then it will be presumed to be as a result of a mental defect, and consequently the willful misconduct provision will not apply. But as far as I know, there is no VA regulation that addresses this circumstance where there is a factual dispute as to whether this was a willful misconduct act in the taking of his own life, or this was an attempt at suicide. I don't recall the argument that there was in fact some sort of mental defect that resulted in this misconduct. The underlying dispute before the agency was that this was suicide as opposed to an act of willful misconduct. The agency found that it was an act of willful misconduct as opposed to suicide because of the nature of the playing of the game of Russian roulette, which is what was the precipitating factor. That's not misconduct? That's what the VA found. And I'm simply saying that that's a perfectly— well, it certainly is a finding that was found not to be clearly erroneous, but it's simply not a criteria under 1310b2. Okay, let's hear from the VA. Ms. Cohn? May it please the Court, we respectfully request that this Court affirm the decision of the Court of Appeals for Veterans Claims because the Veterans Court correctly determined that 38 U.S.C. 1310 precludes payment of dependency and indemnity compensation to the veteran's spouse where the veteran's death was the result of his own willful misconduct. Mr. Carpenter focused a lot on the fact that Chapter 11, specifically 1110, would not qualify this particular veteran for benefits, but that is besides the point in this case. 1310a just refers to Chapter 11 as the standard for determining service connection. It does not say that the veteran has to qualify for benefits under Chapter 11. It simply says look to Chapter 11 in order to determine what service connection means. So it's irrelevant whether Mr. Maiori could or could not have qualified for benefits under Chapter 11. What is relevant is that pursuant to the definition of service connection in 1110, his own willful misconduct meant that his death was not service-connected, and therefore pursuant to 1310a, Ms. Maiori is not eligible for dependency and indemnity compensation. But Mr. Carpenter says B does not refer to Chapter 11, and he's covered under the unless provision that he died in the act of military and naval service. Your Honor, the way the statutes are written, it is clear that B is meant to be a limitation. Whatever it means, it's not necessarily clear. Well, first of all, as you said earlier, B uses negative language. B says unless, shall not be paid unless such veteran died while in active military and naval service. Well, he was certainly in active service. Yes. That's not an issue, right? No, that's not an issue. He was in active service. The issue is that his death was not service-connected. But the point is that it's a negative language, and if B was meant to be an entirely separate provision, why wouldn't it just say compensation shall be paid if the veteran died while in active military service? The way it's phrased, it sounds like a limitation on A, saying you must qualify under 1310a, and if you qualify under A, you must also qualify under B. If you can get paid under A, you shall not be paid unless you are dishonorably discharged or died while in active military service. Another reason that A and B should be read together is that the Chapter 13 is entitled Dependency and Indemnity Compensation for Service-Connected Deaths. It specifically refers to the entire Chapter 13 as being compensation for service-connected deaths. In addition, 38 U.S.C. 101.14 and C.F.R. 3.5 both define dependency and indemnity compensation as a monthly payment made to a surviving spouse because of service-connected death. Now, Ms. Maioria, in her reply brief, asserted that there are circumstances in Chapter 13 where a spouse can receive compensation without establishing service-connection, and she cited 38 U.S.C. 1318. However, in 1318, there is specific language that says that the surviving spouse should be paid in the same manner as if the veteran's death was service-connected. However, 1310b does not have similar language saying that the death of an active service member should be treated as if service-connected in any circumstance. It's hard for me to understand why, if someone commits suicide, that's considered not to be willful misconduct if you commit suicide by hanging yourself, but if you commit suicide by shooting yourself, that is willful misconduct. As Mr. Carpenter said, I believe it depends on the circumstances. If the suicide is determined to be as a result of a mental defect, then it may not be willful. You said it's presumed to be the result of a mental defect, and I'd be interested in the view as to why this line is drawn, particularly when it's to the detriment of the survivor who had nothing to do with either of these procedures. Well, it's not to the detriment of the survivor, because if you're presuming it is a mental defect, then it counts as service. You're saying it's not a mental defect to play Russian roulette with a loaded gun? In this case, the Board and the Court of Veterans' Appeals found that it was not. The willful misconduct issue is not an issue in this particular appeal. It's already been determined that his behavior was willful misconduct, that it wasn't considered suicide, that it wasn't considered an accident. You're saying when someone hangs himself, he's obviously deranged, mentally ill, whereas if someone's playing Russian roulette, that is a kind of risk-taking game rather than necessarily evidence of mental illness. That certainly could be true, Your Honor, and that's what the Board and the Court of Veterans' Appeals found. Again, the difference is dependent on the circumstances. It's dependent on the mental state of the veteran. If someone is determined as a matter of fact to be suffering from post-traumatic stress or mental depression or something like that, and takes their own life, that is not willful misconduct. Does that determine it? That's a presumption. I understand that it's a presumption, not a determination. Right. It's a presumption if someone commits suicide or kills himself in some way that they decided to do that because they had a mental defect, and if there's evidence that that mental defect is somehow service-connected, then the suicide can also be considered service-connected. So the presumption is that it is service-connected. So it does favor the claimant getting claims, but if the evidence shows that it is not a result of the mental defect, then it's not service-connected. You're saying the evidence here, namely the finding that what appears to be in the record that this resulted from intoxication, takes it outside of the compensable mental defect, and you're in the last clause of 38 U.S.C. 105. That's correct. We can't review a finding. Indeed, Mr. Carpenter is not asking us to review the finding that this was willful misconduct. That's correct. In this case, we're starting from the assumption that it was willful misconduct based on the earlier findings of the Board and the Court of Veterans' Appeals. The only question in this case, whether given the fact that it was willful misconduct, whether the spouse can nonetheless recover benefits under what Mr. Carpenter says, 1310B, as a separate provision. But 1310B, again, has to be read in conjunction with 1310A, which specifically says that the disability or death has to be service-connected. And if there's no service connection, which we've agreed upon here because willful misconduct under Chapter 11 clearly means that the death is not service-connected, then the spouse cannot recover anything. Wasn't the willful misconduct the intoxication? The willful misconduct was the gunshot. The fact that Mr. Maillard was familiar with using weapons, he knew what he was doing, and he actively shot the gun. He made a willful decision according to the decisions below. That would be the willful misconduct. So if there had been a bullet in every chamber and he knew it, then his survivor would receive the compensation. But since he was gambling as to whether there was a bullet in the chamber, then there's no compensation. Is that the line you're asking us to draw? Well, that would be a factual determination. If there was a bullet in every chamber, perhaps it would be more likely that it would be considered suicide. And then, again, there would be that presumption that it was from a mental disability. But that's a factual issue, which is not an issue in this case here. We're assuming that all the courts below, and this has been up and down since his death in 1990, at this point we've agreed that it's willful misconduct. I don't think Mr. Carpenter would disagree with that for the purposes of this appeal. The question is just whether the willful misconduct prohibits Ms. Maillard from receiving benefits, and we would argue that 1310A does in fact mean that willful misconduct prohibits her from receiving any benefits. If there are no further questions, we respectfully request that you affirm the Florida Veterans Appeals. Thank you, Ms. Cohen. Mr. Carpenter. The Court, please. I'd like to go to an issue that was raised by the government in regards to the language of 38 U.S.C. 1318, in which the government correctly points out that in our reply brief we discussed that statute and the ability of Congress to recognize that if they're going to make a condition the same as service-connected, then they explain it that way, and that's precisely what Congress did in 1318 when it said that you don't have to be exclusively tied from a service-connected debt, but if you have been totally disabled for 10 years or more under 1318, then we will consider that the same as a service-connected debt. This clearly demonstrates that Congress was aware of the necessity to connect a disconnect when there is an ambiguity in the statute, unless that ambiguity is intended, and the distinction in 1310B-2 is clearly intended. It is intended to be a separate basis, a separate authorization for the right of survivors to receive benefits if a service member dies while on active duty. There is no reference to willful misconduct. It is clear that Congress knows how to write willful misconduct into the language of the statutes. They have done that before, and to persist, as the government has, that this is about a service-connected debt. It is not about a service-connected debt. It is about the provisions of B-2, which is merely a debt which occurs while on active duty service. That's what happened here, and to allow the VA to deny survivors benefits is an unreasonable interpretation of 1310B, and the interpretation of Veterans Court should be reversed by this panel. Thank you very much. Thank you, Mr. Carpenter. Ms. Cohen, the case is taken into submission.